JOY MANUFACTURING CO.

v.

Walter S. BROOKS, Trustee.

In re BRUNS COAL COMPANY, Inc.,
Bankrupt.

Joy Manufacturing Company, Petitioner.

No. 62–C.

United States District Court
S. D. West Virginia.

June 12, 1963.

538

James K. Brown, F. Paul Chambers, Charleston, W. Va., for petitioner, Joy Mfg. Co.

Robert J. Ashworth, Beckley, W. Va., for trustee in bankruptcy.

FIELD, Chief Judge.

The petitioner, Joy Manufacturing Co., seeks a review of the order of the Referee filed on the 29th day of November, 1962, which denied Joy's petition for reclamation. The Referee's order was entered pursuant to his written findings of fact and conclusions of law dated October 8, 1962, which are incorporated in the order by reference.

The facts in this case may be very briefly stated as follows: Joy, a Pennsylvania corporation, sold to the bankrupt, Bruns Coal Co., Inc., an Ohio corporation, a number of items of mining equipment under six conditional sales contracts, the details of which will not be set forth in this opinion as they may be ascertained from the Referee's findings of fact. These contracts were executed during the period from December, 1958, to August, 1961. The contracts are silent as to the place of delivery of the mining machinery but it appears from the evidence that the machinery was delivered to common carriers at Joy's plants in Pennsylvania and Ohio and was shipped f. o. b. shipping point, with freight allowed to the bankrupt's mine in West Virginia.

Three of these contracts provide that the equipment "is to be kept at the mine of the Buyer at or near *Bolt*, in the County of Raleigh, and State of *West Virginia*"; the three remaining contracts provide that the property "is to be kept in the County of *Raleigh*, and State of *West Virginia*." The contracts further provide that the equipment may not be removed from "the county and State aforesaid" without the written consent of Joy. Joy caused the six conditional sales contracts to be filed in the Raleigh County Clerk's Office within ten days after the date of each contract, respectively.

Up to this point in the factual statement there is no dispute, but beyond this point therein lies one of the issues in this petition. The Referee summed up the issue:

"Whether, as a matter of evidence, the property subject to the conditional sales contracts aforesaid was first kept for use in Wyoming County, West Virginia, rather than Raleigh County, West Virginia, *   *  *."

Considerable evidence was taken at the hearing before the Referee as to the location of the boundary line between Raleigh and Wyoming County with reference to the coal lands upon which the equipment was used. Evidence was also taken with respect to the point of delivery of the equipment when it came into West Virginia.

The Referee found that the equipment described in the six conditional sales contracts first came to rest in Wyoming County, West Virginia, and that it was first kept for use in the same county. He also found that the equipment had not been located in any other county except that the continuous miner was temporarily located in Raleigh County for a period of some seven to ten days in late summer 1959, while on the Harvey tract. The Referee also found that Joy at all times until the first meeting of creditors in this proceeding on April 26, 1962, was under the impression that this equipment was shipped to, unloaded at, first kept for use in, and continuously there-

after remained in Raleigh County, West Virginia; and also within ten days following the first meeting of creditors in this proceeding, Joy caused each of the six conditional sales contracts to be filed in the Wyoming County Clerk's Office. None of these contracts have been filed or recorded at any time in any other public office. In all of these findings, I am in agreement with the Referee.

In this review, it is incumbent upon the Court to sustain the Referee's findings as to the facts unless they are clearly erroneous. General Order 47, 11 U.S.C.A. following § 53. The courts have uniformly held that unless the findings of the Referee are clearly erroneous or are not supported by substantial evidence such findings should be adopted by the Court. See In re Lurie Bros., Inc., 267 F.2d 33 (7th Cir. 1959); In re Slumberland Bedding Co., Inc., 115 F.Supp. 39 (D.Md.1953); In re Philpott, 37 F. Supp. 43 (S.D.W.Va.1940). Joy has raised questions in relation to the evidence as to whether it was of sufficient weight to prove certain facts and as to the manner in which the Referee resolved conflicts in the evidence. It is these matters upon which the Court must look to the Referee. The Referee, rather than this Court, heard the testimony and observed the witnesses and he was in a much more favorable position to pass on the facts in this case. It is my opinion, after reviewing the record, that there is substantial evidence upon which the Referee could determine the facts as he did, and I therefore sustain his findings and incorporate his written findings of fact dated October 8, 1962, as a part of this opinion.

The second issue in the case was stated by the Referee:

"[W]hether, as a matter of law, Joy Manufacturing Company caused these conditional sales contracts to be filed timely in the office of the Clerk of the County Court of Wyoming County, West Virginia, so that the same are valid as security instruments as against the trustee in bankruptcy herein."

Unquestionably, West Virginia law should apply to these conditional sales contracts inasmuch as five of the six contracts contained this language: "It is mutually agreed between the Buyer and Seller that this contract is made and intended to comply with all of the provisions of the Uniform Conditional Sales Act." At all times herein pertinent the Uniform Conditional Sales Act was in effect in West Virginia, W.Va.Code ch. 40, art. 3, §§ 1–32 (Michie 1961). In this regard the Supreme Court of West Virginia has observed: "That law (Uniform Conditional Sales Act) establishes a policy respecting creditors and purchasers for value and without notice, and, in so far as a contract made in another state and to be performed in this state, would affect the rights of such persons, it would govern the construction." State v. Hall, 91 W.Va. 648, 653, 114 S.E. 250, 252 (1922).

Section 5 of the Uniform Conditional Sales Act, W.Va.Code ch. 40, art. 3, § 5 (Michie 1961) provides in part as follows:

"Every provision in a conditional sale contract reserving an interest in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy or otherwise a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale: * *."

The controversy between the parties in this petition centers on the place of filing required by the Uniform Conditional Sales Act. The trustee asserted, and the Referee found in accordance with his view, that the contracts should have been filed initially and solely in Wyoming County under the provisions of Section 6 of the Uniform Conditional Sales Act, W.Va.Code ch. 40, art. 3, § 6 (Michie 1961). Joy, on the other hand, asserted before the Referee and still asserts in this petition that its lien was protected

by compliance with Section 14 of the Act. W.Va.Code ch. 40, art. 3, § 14 (Michie 1961). Joy's theory appears to be that since delivery of the machinery was made to common carriers in Pennsylvania and Ohio, and was then delivered into West Virginia that "title" passed to the buyer when the machinery was delivered to the common carriers in Ohio and Pennsylvania; that subsequently, the property was "removed" from these states into West Virginia and therefore Section 14 of the Act should apply as to the filing of these contracts. In my opinion the Referee correctly interpreted the law in rejecting Joy's argument.

Section 6, relied upon by the trustee provides as follows:

"The conditional sale contract or copy shall be filed in the office of the clerk of the county court in the county in which the goods are first kept for use by the buyer after the sale. It shall not be necessary to the validity of such conditional sale contract, or in order to entitle it to be filed, that it be acknowledged or attested. This section shall not apply to the contracts described in section eight (§ 4014) of this article."

Section 14, relied upon by Joy, provides as follows:

"When, prior to the performance of the condition, the goods are removed by the buyer from one county in this State to another county in this State in which such contract or a copy thereof is not filed, or are removed from another state into a county in this State where such contract or copy is not filed, the reservation of the property in the seller shall be void, as to the purchasers and creditors described in section five (§ 4011) of this article, unless the conditional sale contract or a copy thereof shall be filed in the county to which the goods are removed, within ten days after the seller has received notice of the county to which the goods have been removed. The provisions of this section shall not apply, however, to the goods de-scribed in section eight (§ 4014) of this article. The provisions of section eleven (§ 4017) of this article regarding the duration of the validity of the filing and the necessity for refiling shall apply to contracts or copies which are filed in a county other than that where the goods are originally kept for use by the buyer after the sale."

■ Joy's whole theory turns on the meaning of the word "removed." It is true that if property is "removed" from another state to the State of West Virginia then Section 14 applies. However, in this case although the property was delivered to the bankrupt in Pennsylvania and Ohio and was then transported into Wyoming County, West Virginia, it was not "removed" from Pennsylvania and Ohio within the meaning of Section 14. "Removed" as used in that section means that the property has had a contractual situs in one place and then is removed in a manner that reestablishes the situs of the property in another state or county. Here the machinery never had a situs in Pennsylvania or Ohio insofar as the bankrupt was concerned within the meaning of the Act. It would appear that the parties themselves recognized West Virginia as the initial contractual situs when they included in each contract the proscription against the removal of the property from Raleigh County, West Virginia, without the written consent of Joy.

■ It is not at all necessary to resolve the controversy relative to the use of the term "refiling" in the heading of Section 14 for the purpose of this interpretation, for the body of this section in itself when read in the light of the other sections of the Act supports the Referee's conclusion. We are dealing here with an Act designed to obtain uniformity in the protection of creditors in the area of conditional sales agreements. Constructive notice to these creditors by compliance with the provisions for filing such contracts is the very keystone of the statute. Section 5 places upon the vendor the obligation of filing the contract

within ten days after the making of the sale and Section 6 designates the appropriate county in which such filing should be made. In the light of these requirements, Section 14 cannot possibly be considered in vacuo. It is clearly designed to protect a vendor who, having complied with the filing provisions of Sections 5 and 6, is protected thereby even though the goods are removed by the buyer to another county or, indeed, to another state. But clearly, Section 14 presupposes that the vendor has acquired his initial protection by compliance with Sections 5 and 6. In the present case Joy's filing of the contracts within ten days after its notice of the true location of the machinery and equipment at the first meeting of creditors can avail it nothing under the provisions of Section 14 by reason of its failure to comply with the threshold requirement of Section 6. I agree with the Referee that if the argument of Joy were adopted, the requirements of Section 5 would frequently be completely negated and, indeed, the very purposes of the Uniform Act would be frustrated.

I am not indifferent to Joy's situation resulting from the misleading representations of the bankrupt, but that cannot be a determinative factor here. As the Court held in Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841 (1915), the duty rests upon the seller to select the proper recording district, and upon his failure to ascertain or select the proper district, it is the seller rather than innocent purchasers or creditors protected by the Act who must suffer the consequences of this failure. Nor does the bankrupt's misrepresentation to Joy as to the location of the property in West Virginia estop the trustee from challenging the defective filing. The Act was designed for the protection of creditors, and the trustee is the representative of those creditors. Stewart v. Platt, 101 U.S. 731, 25 L.Ed. 816 (1879); Fairbanks Steam Shovel Co. v. Wills, supra; Earhart v. Valerius, D.C., 25 F.Supp. 754. In my opinion Joy's

failure to comply with Sections 5 and 6 of the Uniform Conditional Sales Act rendered the contracts invalid against the trustee in bankruptcy by virtue of the provisions of Section 70, sub. c of the Bankruptcy Act, and for that reason the order entered by the Referee on November 29, 1962, denying petitioner's reclamation petition will be affirmed.

Counsel may prepare an appropriate order to that effect, incorporating this ruling by reference therein.