In the Matter of DENNIS MITCHELL
INDUSTRIES, INC., Debtor.

A. J. Armstrong Co., Inc., Appellant.

No. 17240.

United States Court of Appeals
Third Circuit.

Argued Nov. 8, 1968.

Reargued Nov. 5, 1969.

Decided Dec. 18, 1969.

Morton Newman, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa. (Goncer M. Krestal, Fred Blume, Philadelphia, Pa., on the brief), for appellant.

Barnie F. Winkelman, Philadelphia, Pa. (Benjamin A. Katz, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, FORMAN and STAHL, Circuit Judges.

Reargued before HASTIE, Chief Judge, and KALODNER, FORMAN, FREEDMAN, SEITZ, ALDISERT, STAHL and ADAMS, Circuit Judges.

## OPINION OF THE COURT

STAHL, Circuit Judge.

This is an appeal from a decision of the district court[1] which affirmed an order of the referee in bankruptcy granting seller's reclamation petition for equipment sold to the bankrupt, Dennis Mitchell Industries, Inc. The facts relevant to this controversy are as follows.

*Factual Background*

The bankrupt, a manufacturer and distributor of metal and plastic products, had its principal place of business in Philadelphia. It also had plants in Woodbury, New Jersey, and Millsboro, Delaware. Pursuant to a conditional sales agreement dated May 20, 1965, Mitchell purchased two hydraulic cutting machines from Herman Schwabe, Inc., appellee. Schwabe's plant is in Brooklyn, New York, and the contract was entered into there. The contract provided that the machines were to be kept in Mitchell's Philadelphia plant until they had been fully paid for and that they could not be placed elsewhere without Schwabe's prior consent.

On May 21, 1965, Schwabe filed a financing statement in the Philadelphia Prothonotary's Office, and on May 24, 1965, in Harrisburg, Pennsylvania, in the office of the Secretary of the Commonwealth.

At or about the time of the purchase, Mitchell had the machines picked up by its truck at Schwabe's Brooklyn location and, despite the contract provisions,[2] took them to its plant in Woodbury,

---

1. 280 F.Supp. 433 (E.D.Pa.1968). For a comprehensive critique of the lower court decision, see Note, 67 Mich.L.Rev. 1421 (1969).

2. In its request to the referee for findings of fact in the reclamation proceeding, the seller, Schwabe, asserted that this "violation of the terms of the agreement [was] tantamount to a fraud" (Request No. 11). We do not believe the reference to fraud is of legal significance here as the seller's reclamation petition is predicated on the alleged validity or priority of its security interest.

Appellee also talks about fraud in its brief (p. 12):

When the removal of pledged chattels was without the knowledge of the mortgagee, the state into which it was removed has no jurisdiction to effect the title. The rights of the mortgagee are therefore protected against subsequent transactions to the same extent that they are in the state of original situs.

Security transactions which deal with removals fraudulently induced by a party claiming a conflicting interest in the chattel do not involve any choice of law problem, since all the states agree in their refusal to exercise jurisdiction, since no jurisdiction exists * * * (citing cases).

But the "party claiming a conflicting interest" here, appellant Armstrong, is a purchaser from the bankruptcy estate and had no part in any fraudulent conduct, even assuming the bankrupt Mitchell's breach of the sales agreement may be so characterized. Furthermore, as more fully developed later, the rule expressed in the first paragraph quoted above no longer represents the prevailing law as now embodied in the Uniform Commercial Code.

In Joy Manufacturing Co. v. Brooks, 224 F.Supp. 537 (S.D.W.Va.), *aff'd per curiam*, 325 F.2d 721 (4th Cir. 1963), a closely analogous case, a conditional buyer took the goods into a different West Virginia county than he had evidently promised to do, causing the conditional seller to file in the wrong county under the West Virginia Uniform Conditional Sales Act in effect at that time. When the buyer went into bankruptcy, it was held that the trustee prevailed against the mis-

New Jersey. The machinery was used exclusively in that plant and was never physically in Pennsylvania. Appellee Schwabe never recorded its security interest in New Jersey.

On August 3, 1966, Mitchell filed a voluntary petition for an arrangement under Chapter XI of the Bankruptcy Act and co-receivers were appointed to take charge of its property. On April 5, 1967, Mitchell was adjudicated a bankrupt with the same receivers continuing to serve. At a meeting of the creditors on August 9, 1967, one of the co-receivers was appointed trustee.

In the meantime, appellee Schwabe had filed a reclamation petition[3] for the machinery on April 18, 1967. The receivers, in compliance with an order from the referee directing them to file an answer to the petition,[4] averred that Schwabe had failed to comply with the recording provisions of the Uniform Commercial Code of New Jersey, where the property was located. A hearing was held before the referee on September 12, 1967, and on October 25, 1967, the referee granted Schwabe's reclamation petition.[5]

led seller under § 70(c). The district court said:

> I am not indifferent to Joy's situation resulting from the misleading representations of the bankrupt, but that cannot be a determinative factor here. As the Court held in Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L. Ed. 841 (1915), the duty rests upon the seller to select the proper recording district, and upon his failure to ascertain or select the proper district, it is the seller rather than innocent purchasers or creditors protected by the Act who must suffer the consequences of this failure. Nor does the bankrupt's misrepresentation to Joy as to the location of the property in West Virginia estop the trustee from challenging the defective filing. The Act was designed for the protection of creditors, and the trustee is the representative of those creditors. Stewart v. Platt, 101 U.S. 731, 25 L.Ed. 816 (1879); Fairbanks Steam Shovel Co. v. Wills, supra; Earhart v. Valerius, D.C., 25 F. Supp. 754. In my opinion Joy's failure to comply with Sections 5 and 6 of the Uniform Conditional Sales Act rendered the contracts invalid against the trustee in bankruptcy by virtue of the provisions of Section 70, sub. c of the Bankruptcy Act, and for that reason the order entered by the Referee on November 29, 1962, denying petitioner's reclamation petition will be affirmed. 224 F.Supp. at 541.

3. The cost of the machines was $13,973. Under the conditional sales contract the unpaid balance plus the financing charge amounted to $12,366.36. Appellant's Appendix (App.) 14a. A number of monthly installments were paid prior to bankruptcy as well as after the Chapter XI petition was filed. At the time of the filing of the reclamation petition, there was a balance due of $5,839.67, plus interest and counsel fees. App. 11a–12a.

4. The receivers having failed to make a timely answer to the reclamation petition, the seller moved for a default judgment. This was denied by the referee who stated in a letter, dated May 9, 1967, to seller's counsel, "I have been advised that this delay has been caused by an attempt to sell the machinery and equipment as a going concern and, accordingly, since there was no deliberate default, I must decline to grant the prayer of your petition."

5. App. 25a. 4 U.C.C. Reporting Service 1084 (1967).
   For easier comprehension, the chronology of the key events here is summarized below:
   May 20, 1965—Conditional sales agreement.
   May 20, 1965 (on or about)—Machinery picked up by Mitchell and taken to New Jersey.
   May 21, 1965—Financing statement filed in Philadelphia by Schwabe.
   May 24, 1965—Financing statement filed in Harrisburg by Schwabe.
   August 3, 1966—Filing of Chapter XI petition by Mitchell.
   August 8, 1966—Appointment of receivers.
   April 5, 1967—Mitchell adjudicated a bankrupt.
   April 18, 1967—Filing of reclamation petition by Schwabe.
   June 9, 1967—Authorization of sale to Armstrong.
   August 9, 1967—Appointment of trustee in bankruptcy.
   September 12, 1967—Hearing on reclamation petition.
   October 25, 1967—Referee's order granting reclamation petition.
   February 15, 1968—District Court's affirmance of referee's order.

■ On June 9, 1967, while Schwabe's petition was pending, a special meeting of the creditors was held at which time the receivers' petition to sell their right, title and interest in all the bankrupt's assets, except cash, subject to liens and claims, to appellant Armstrong, a secured creditor of the bankrupt,[6] was granted by an order entered by the referee. The hydraulic cutting machines were included in the sale.

The dispute, then, is actually between the seller, Schwabe, and appellant, Armstrong, with the latter contending that Schwabe's security interest was unperfected and hence subordinate to the rights of the trustee under § 70(c) of the Bankruptcy Act, 11 U.S.C.A. § 110 (c) (Supp.1969).[7] Armstrong contends, therefore, that it succeeds to the rights of the trustee and takes the property free of Schwabe's lien.

Appellant Armstrong argued before the referee that since the equipment had remained continuously in the bankrupt Mitchell's Woodbury plant, New Jersey law governed the perfection of Schwabe's security interest, and Schwabe should have filed a financing statement in that state in order to perfect its security interest. Schwabe having failed to do so within four months [8] after the property was installed in the debtor's New Jersey plant, Armstrong contended that Schwabe's security interest, even assuming it had originally been perfected in Pennsylvania,[9] was unperfected and hence invalid against the trustee.

### Decision of Referee

The referee's decision was based primarily on § 9–103(3) of the Uniform Commercial Code.[10] He ruled that under this section of the Uniform Commercial

---

6. A secured creditor, like any other creditor, may be a purchaser at a bankruptcy sale: 4A Collier On Bankruptcy ¶ 70.98 [15], p. 1170 (14th ed. Moore, Oglebay, Kennedy & King 1967).

According to appellant's brief, p. 3, Schwabe "entered no objection to the Receivers'-Trustees' Petition prior to the sale."

On power of receivers to effect a sale upon approval of the bankruptcy court, see 1 Collier On Bankruptcy ¶ 2.28 [3] (14th ed. Moore, Mulder & Oglebay 1968); 4A Collier, supra at ¶ 70.97 [1], p. 1131 n. 12; ¶ 70.98 [14], p. 1168.

7. Section 70(c) provides, in pertinent part:

* * * The trustee shall have as of the date of bankruptcy the rights and powers of: * * * a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. * * *

The fact that as of the date of bankruptcy and at the time of the filing of the reclamation petition receivers were in charge of the bankruptcy estate, the trustee not having been appointed until August 9, 1967, does not make inapplicable the trustee's "strong-arm clause" power

or ideal lien creditor status under this section. See 4A Collier, supra note 6 at ¶ 70.49 n. 1, p. 596.

8. See note 10 infra for § 9–103(3) of the Uniform Commercial Code.

9. Armstrong urged alternatively that the machinery never having been in Pennsylvania, the filing under that state's Uniform Commercial Code was without legal effect so that the four-month rule was not even applicable. See 1 Gilmore, Security Interests in Personal Property § 22.9, p. 630 (1965).

10. Uniform Commercial Code § 9–103(3) provides as follows:

(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within 30 days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to

Code (seemingly New Jersey's) Schwabe had a "valid perfected security interest as against the Trustee and his assignee." (App. 29a). In reaching this result the referee held, in light of the debtor's improper removal of the equipment to New Jersey and Schwabe's filing in Pennsylvania, that "the only proper construction" of the four-month rule of § 9–103 (3) was that the time period does not begin to run until "the secured party has been notified of the removal and has failed to re-record the financing statement." (App. 27a–28a). Implicit in this conclusion must have been a

determination that Schwabe's filing in Pennsylvania was sufficient to perfect its security interest in that state.

The referee also noted that under the Article 9 section on rules of priority, § 9–301(1), "the assignee in this particular case [Armstrong] is not a person who takes priority over an unperfected security interest." [11]

Finally, the referee said that under "Section 9–401(2), since this was a filing made in good faith, it is effective against the assignee or the trustee, who had knowledge [12] of the contents of the

---

be determined by the law of this state. If the security interest was already perfected, under the law of the jursidiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.

All the states which have any connection with the transactions here have enacted the Uniform Commercial Code. *See* New Jersey Stat.Ann. tit. 12A, §§ 1–101 et seq. (1962); N. Y. Uniform Commercial Code, §§ 1–101 et seq. (McKinney 1964); Purdon's Pa.Stat.Ann. tit. 12A, §§ 1–101 et seq. (Supp.1969).

The Article 9 sections relevant to the decision in this case are very similar in all three states and such differences as there may be do not affect the outcome here. Except where it is important to indicate which state law is being applied, the reference to sections, as well as to comments, will generally be to the 1962 official text of the Uniform Commercial Code as published by the American Law Institute and the National Conference of Commissioners on Uniform State Laws.

In connection with the question of which state law to apply in multi-state transactions, the following statement by Collier is instructive:

In cases where items of property are scattered through several states, or where legal relations governed by varying state laws are affected by the trustee's status under § 70c, problems of the conflict of laws are certain to arise. Although some courts have appeared to think that a bankruptcy court is obliged to apply the conflict-of-laws rules of the state of the forum, the more supportable view is that the bankruptcy court should be free to exercise for itself the choice of applicable state law. In any event, the tendency of the courts is to treat the law of the situs of the property at bankruptcy as governing to the extent that § 70c refers to nonbankruptcy law. [Footnotes omitted] 4A Collier, *supra* note 6 at ¶ 70.49, pp. 605–606.

11. App. 28a.
The referee was evidently relying on § 9–301(1) (b) which provides that "an unperfected security interest is subordinate to the rights of * * * (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected; * * *" The trustee is such a lien creditor, § 9–301(3), note 13 *infra*, and is assumed to be without knowledge so long as there may be some creditors of the bankrupt without knowledge. (*Cf.* note 14 *infra*, and the accompanying text.) We cannot see how § 9–301(1), cited by the referee, is directly applicable to or can adversely affect appellant Armstrong, *a purchaser from the trustee.*

12. "Knowledge," as used in the Code, means "actual knowledge." § 1–201(25).
In its brief and at oral argument, Armstrong contended that there was no support in the record for the finding that it had knowledge of Schwabe's security interest, and we have been unable to discern any clear basis for such a finding

financing statement," App. 28a, citing In the Matter of Komfo Products Corp., 247 F.Supp. 229 (E.D.Pa.1965).

Section 9–401(2) provides as follows:

(2) A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Even if appellant Armstrong had actual knowledge of Schwabe's unperfected security interest, which appellant denies, we are concerned primarily with the knowledge of the trustee to whose rights

the appellant, Armstrong, succeeded. Both under § 70(c) of the Bankruptcy Act and under § 9–301(3) [13] of the Uniform Commercial Code the trustee has the status of an ideal lien creditor. Under the Code section the trustee can be affected with "knowledge" if it is shown that every creditor of the bankrupt had such knowledge, which has not been shown here. Under § 70(c) of the Bankruptcy Act, however, the trustee may have the status of an ideal lien creditor even if all the creditors do in fact have actual knowledge.[14] We need not reach the possible conflict between the Uniform Commercial Code and the Bankruptcy Act on this point because there is no evidence in the record to indicate that every creditor of the bankrupt had actual knowledge of appellee's unperfected security interest.

(also asserted by the district court, as pointed out later) in the record. Even if such knowledge had been present, however, the ultimate conclusion we reach in this case is that it would not be material to defeat Armstrong's rights.

See In Matter of Luckenbill, 156 F. Supp. 129 (E.D.Pa.1957), also a bankruptcy case, in which § 9–401(2) was held to be of no help to a reclamation petitioner who had failed to file his installment sales contracts in accordance with the full requirements of the Pennsylvania Uniform Commercial Code, and In Matter of Babcock Box Co., 200 F. Supp. 80 (D.Mass.1961), in which the trustee's admitted knowledge of an unperfected security interest was held to be immaterial under § 9–401(2). See also Sequoia Machinery, Inc., v. Jarrett, 410 F.2d 1116, 1119 (9th Cir. 1969).

13. Section 9–301(3) provides as follows:

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. Unless all the creditors represented had knowledge of the security interest such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest.

Thus, under § 9–301(3), the trustee's personal knowledge of an unperfected security interest does not affect his status as an ideal lien creditor. See also 4A Collier, *supra* note 6 at ¶ 70.53, p. 639, ¶ 70.62A[9]; In the Matter of Babcock Box Co., 200 F.Supp. 80 (D.Mass.1961).

Under the predecessor to § 70(c) of the Bankruptcy Act (§ 47a(2)), a vendor who had failed to file a conditional sales agreement as required by state law advised the receiver in bankruptcy immediately after the latter's appointment of the existence of the agreement. This was held not to affect the ideal lien creditor status of the receiver-trustee. In re Supreme Furniture Co., 25 F.2d 488 (D. N.J.1928); *accord,* In re Miller, 6 F. Supp. 79 (D.N.J.1934) (opinion by Judge Forman), as to effect of reference to unperfected security interest in schedules accompanying bankruptcy petition; In the Matter of Lindsey, 131 F.Supp. 11, 13 (D.N.J.1955).

14. 4A Collier, *supra* note 6 at ¶ 70.53, p. 637, ¶ 70.62A[9]; In Re Brown, 5 U. C.C. Reporting Service 401, 409 (W.D. Mich.1968) (decision of referee); 1 Coogan, Hogan and Vagts, Secured Transactions Under the Uniform Commercial Code § 10.02, pp. 1056–1061 (1968); Comment, Toward Commercial Reasonableness: An Examination of Some of the Conflicts Between Article 9 of the Uniform Commercial Code and the Bankruptcy Act, 19 Syr.L.Rev. 939, 955 (1968).

*Komfo, supra,* relied upon by the referee as well as by appellee, is clearly distinguishable. In *Komfo,* which involved an assignment of accounts receivable as security, the financing statement had not been properly recorded prior to the time that the debtor had made *an assignment for the benefit of creditors.* The security interest *was* perfected prior to the subsequent bankruptcy of the debtor.

In resisting the creditor's reclamation petition for the accounts receivable in *Komfo,* the trustee relied on § 70(c) and § 70(a) (8) of the Bankruptcy Act. The court summarily rejected the § 70(c) claim because the security interest in the accounts receivable *had been* perfected prior to the date of bankruptcy.

Section 70(a) (8) created a somewhat more difficult problem *not present in the instant case.* This provision of the Bankruptcy Act gives the trustee title to "property held by an assignee for the benefit of creditors appointed under an assignment which constituted an act of bankruptcy * * *," 11 U.S.C.A. § 110(a) (8) (1953), as was the case in *Komfo.*

While it was true that the security interest had not been perfected prior to the assignment for the benefit of creditors, the status of the assignee as an ideal lien creditor under § 9–301(3) of the Uniform Commercial Code [15] was dependent upon whether all of the creditors represented by the assignee had knowledge of the unperfected security interest.

The court, in *Komfo,* found strong evidence in the record that this was so and remanded the case to the referee for "a determination of whether all the creditors had knowledge of the security interest prior to the execution of the assignment for the benefit of creditors." 247 F.Supp. at 240.

The gist of *Komfo,* then, was that while the trustee could not prevail under § 70(c) of the Bankruptcy Act, he may have been able to succeed to the rights of the assignee in bankruptcy *if* the latter had priority over the holder of the unperfected security interest under § 70 (a) (8). *Komfo,* therefore, is wholly inapposite to the direct § 70(c) problem we have here.[16]

The referee also held the "equitable doctrine" of Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), to be an alternative ground for his decision, finding the bankrupt's action in placing the equipment in New Jersey in violation of the conditional sales agreement, coupled with Armstrong's "knowledge" [17] of Schwabe's security interest, to be a sufficient basis for granting the reclamation petition.

### Decision of District Court

The district court affirmed [18] the referee's order on the grounds stated by the referee and for some additional reasons. The court held that assuming, without conceding, that Schwabe's failure to file in New Jersey rendered its security interest unperfected and hence subordinate to the rights of the trustee, appellant Armstrong would still not prevail be-

15. See note 13, *supra.*

16. The inapplicability of *Komfo* to a § 70(c) situation is recognized in 4A Collier, *supra* note 6 at ¶ 70.62A[9], p. 728 n. 93.

> Insofar as the instant appeal is concerned, *Komfo's* inapplicability is further buttressed by Lewis v. Manufacturers Nat'l Bank, 364 U.S. 603, 607, 81 S.Ct. 347, 349, 5 L.Ed.2d 323 (1961), where the Court said:
>
> We think that one consistent theory underlies the several versions of § 70

> sub. c which we have set forth; *viz.,* that the right of creditors—whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of "the date of bankruptcy," not an anterior point of time. (Footnote omitted.)
> *Komfo* dealt primarily with a problem arising "at an anterior point of time"; our case does not.

17. See note 12, *supra.*

18. *Supra,* note 1.

cause it had knowledge [19] of Schwabe's security interest. This result was based on the court's conclusion that a sale in bankruptcy is a judicial sale, and that a purchaser at a judicial sale takes free from liens only if he was without actual or constructive notice of them.[20]

The district court also seemed to adopt the referee's conclusion that under Article 9 priority rules Armstrong's knowledge prevented it from taking title free of the security interest even though it purchased the machinery from the trustee.[21]

As an alternative ground for affirming the referee's decision, the district court held that because Mitchell was able to transport the machinery to New Jersey, Armstrong should not be permitted to argue that the equipment was not mobile, and construing the Code liberally this equipment could be characterized as "goods of a type which are normally used in more than one jurisdiction" within the meaning of § 9–103(2).[22] That being the case, the district court reasoned that Schwabe's filing in Pennsylvania was effective to perfect its security interest as the debtor Mitchell's chief place of business was in Pennsylvania.

## I.

At the outset we note a dispute between the parties as to which law governs the validity and perfection of Schwabe's security interest.[23] Appellant Armstrong, noting that both New Jersey and Pennsylvania have enacted the Uniform Commercial Code, claims that New Jersey law governs because the equipment was physically present in that state.[24] And §§ 9–302(1) and 9–401 of the Code, as adopted in New Jersey, require that a financing statement be filed in the state where the collateral is located in order to perfect a security interest in the type of equipment involved here (assuming for present purposes that these machines are not mobile goods of a type which are normally used in more than one state). As no financing statement was ever filed in New Jersey, Armstrong contends that Schwabe's interest is not perfected. To Schwabe's argument that the Pennsylvania filing perfected its security interest, Armstrong replies that even if that is correct, such perfection lapsed after the machinery had been in New Jersey more than four months. See § 9–103(3), *supra* note 10.

---

19. See note 12, *supra*.

20. The district court relied on Pennsylvania authority for this rule. Because of our disposition of the case, we need not inquire under Pennsylvania law or other *state* law what effect a purchaser's actual or constructive notice of liens (if indeed there was notice here) has on the interest he acquires at a bankruptcy sale under the circumstances here.

21. 280 F.Supp. at 436.

22. The relevant part of this section provides:
    (2) If the chief place of business of a debtor is in this state, this Article governs the validity and perfection of a security interest and the possibility and effect of proper filing with regard to general intangibles or with regard to goods of a type which are normally used in more than one jurisdiction (*such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like*) if such goods are classified as equipment or

classified as inventory by reason of their being leased by the debtor to others. Otherwise, the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern. * * * (Emphasis added.)

23. See last paragraph of note 10, *supra*, citing comment from Collier.

24. Uniform Commercial Code § 9–102(1)(a) provides as follows:
    (1) Except as otherwise provided in Section 9–103 on multiple state transactions and in Section 9–104 on excluded transactions, this Article applies so far as concerns any personal property and fixtures *within the jurisdiction of this state*
    (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights;
    * * * (Emphasis added).
    *See* Comment 3 to § 9–102.

Schwabe asserts that its security interest was perfected in Pennsylvania, as held by the referee, and that it could not become unperfected solely by reason of Mitchell's removal of the equipment to New Jersey without the seller's knowledge.

Despite the seemingly harsh result, we believe that neither a liberal construction of the relevant provisions of the Uniform Commercial Code nor the *Bank of Marin* declaration that "equitable principles govern the exercise of bankruptcy jurisdiction" [25] can avail the appellee-seller on the facts of this case.

Because, as explained later, we do not consider the machines in question here as "goods of a type which are normally used in more than one jurisdiction," § 9–103(2), we hold, under any choice-of-law criterion, that Schwabe's security interest was unperfected as of the date of bankruptcy, i. e., when Mitchell filed its Chapter XI petition. The states which have any connection with the transaction are New York, Pennsylvania and New Jersey, and each has enacted the Uniform Commercial Code. In our view, § 9–103(3) precludes the recognition of appellee's security interest as perfected regardless of which state's law is deemed controlling.

Even if we assume that § 9–102(1) (a) [26] is not applicable because of the multi-state nature of Schwabe's original agreement with the bankrupt Mitchell, we must look to § 9–103(3) for resolution of the perfection problem. Had the machinery been taken to Mitchell's Philadelphia plant within 30 days after the security interest had attached,[27] it is clear that Pennsylvania law would control, and Schwabe's Pennsylvania filing would have perfected its security interest as the parties intended that the property be kept in Pennsylvania (see § 9–103(3); In re Kokomo Times Publishing & Printing Corp., 301 F.Supp. 529, 5 U.C.C. Reporting Service 954, 963 (S.D.Ind. 1968)). Or, had the property remained in New York for not more than 30 days, not in the seller's possession, the Pennsylvania filing would probably have been sufficient to perfect the security interest in New York as well for that period. (See 1 Gilmore, Security Interests in Personal Property § 22.9 (1965)). The second sentence of § 9–103(3) seems to suggest that where the parties understood at the time that the security interest attached that the goods would be kept in Pennsylvania, if the property is *not* taken into Pensylvania within 30 days after the security interest attached Pennsylvania law would no longer govern the validity and perfection of the security interest. *(Id.)* Had the equipment remained in New York beyond 30 days, it seems fair to say that New York law would then govern the validity and perfection of Schwabe's security interest.

If the goods had remained in New York more than four months, not in the seller's possession, there is little doubt that under New York law the

---

**25.** Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277 (1966). Giving due weight to the language of the Supreme Court in the case, *Bank of Marin* is not an endless fount of equity to mitigate every harsh result which may occur in the proper application of the Bankruptcy Act. Particularly when dealing with commercial law problems within the purview of the Uniform Commercial Code, the certainty which the Code attempts to establish in this area should be accorded primary recognition.

For a critical analysis of the Supreme Court decision, see Holahan and Fisch, Post-Bankruptcy Payment of Checks: Bank of Marin v. England, 28 U.Pitt.L. Rev. 579 (1967). The authors conclude that "the value of the case as a precedent is impaired by the lack of a substantial interest in the trustee, by the dissents, and by the language of the majority opinion which invites restricting the holding to the particular circumstances of this case." *Id.* at 596. See also Note, 42 Tul. L.Rev. 210, 217–218 (1967).

**26.** *See* note 24 *supra.*

**27.** Here the security interest appears to have attached while the equipment was in New York. See Uniform Commercial Code, § 9–204.

Pennsylvania filing would not have served to perfect the seller's security interest in light of the rather clear intent expressed in § 9–103(3) that the secured party is under a duty to keep himself informed of his debtor's dealings with the collateral. *But here, the goods having been removed directly to New Jersey, under § 9–103(3) the failure to file a financing statement in that state clearly rendered the security interest unperfected at the end of four months even were we to consider the security interest to have been originally perfected in Pennsylvania.*

■ Contrary to the position of the referee, the four months' period, when applicable,[28] begins to run whether or not the secured party has notice that the collateral has been removed to another jurisdiction. Uniform Commercial Code, § 9–103, Comment 7;[29] In re Welker, 2 U.C.C. Reporting Service 169 (W.D. Pa.1964) (decision of referee); Churchill Motor, Inc. v. A. C. Lohman, Inc., 16 App.Div.2d 560, 229 N.Y.S.2d 570, 577 (1962), reviewed in Hogan and Penney, Commercial Law, 14 Syr.L.Rev. 248, 256 (1962); First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162, 169 (1966), discussing § 9–103(3) of the New Jersey Uniform Commercial Code; 1 Gilmore, Security Interests in Personal Property § 22.8, p. 626 (1965).

To reiterate, since Schwabe never filed a financing statement in New Jersey, we believe that under Pennsylvania, New Jersey or New York law its security interest was unperfected as the equipment had been in New Jersey longer than four months. That being the case, it follows that Schwabe's interest is subordinate to the rights of the trustee under both § 70(c) of the Bankruptcy Act and § 9–301(1) (b) and (3) of the Uniform Commercial Code.

■ With regard to the applicability of § 9–103(2)[30] relating to mobile goods, we think the approach adopted by the district court, however equitable in intent, places too great a strain on the meaning of "goods of a type which are normally used in more than one jurisdiction." While the enumeration of certain types of goods in § 9–103(2) is not intended to be all inclusive, it seems clear that the test for mobile goods turns on the type of goods involved and not on their actual use in or transportation between more than one jurisdiction. To say that goods fall within that section simply because they may be and are easily transported from state to state overlooks the nature of the test for mobile goods and the particular problem § 9–103(2) was intended to resolve.[31] In view of the scope of § 9–103(2), we conclude that industrial equipment of the type involved here may not be characterized as mobile goods within the meaning of that section. Therefore, the filings in Pennsylvania did not serve to perfect appellee's security interest under § 9–103 (2).

---

28. See note 9, *supra.*

29. This comment emphasizes the change from the prior Uniform Conditional Sales Act provision which had required "notice" to the seller of the removal before imposing the duty to refile in the state to which the goods had been removed.

30. See note 22 *supra.*

31. See § 9–103, Comment 3.
   "It should be noted that the § 9–103(2) rule is keyed to the type of goods and not to their actual use: * * *" 1 Gilmore, *supra* note 9 at § 22.7, p. 620.

To the same effect, it has been stated: Clearly, the Code's *lex situs* rule is unsatisfactory for this kind of collateral because it may be constantly on the move. * * *

* * * It should be stressed that the special rule applies whether the particular collateral in question is in fact mobile or not; what is determinative is whether the collateral is of a *type* normally used in more than one jurisdiction. * * * Ruud, Article 9 of the Uniform Commercial Code—Its Structure and Applicability, 44 Tex.L.Rev. 683, 692–693 (1966).

## II.

There remains the issue of Armstrong's title and the effect, if any, of its "knowledge" of Schwabe's unperfected security interest. As already noted, Armstrong disputes the referee's finding as well as that of the district court that it had actual knowledge of Schwabe's security interest. In any event, we believe that a finding of such knowledge or notice, actual or constructive, is immaterial if we decide that a purchaser from a trustee in bankruptcy takes free of the lien invalidated under § 70(c) of the Bankruptcy Act.

■ Granting that a bankruptcy sale is a judicial sale,[32] we see no reason why local law on judicial sales or any other state law, such as Article 9 of the Uniform Commercial Code, should determine what interest a party acquires at a bankruptcy sale. The broad powers which the "strong-arm clause" of § 70(c) confers upon the trustee are intended to be utilized for the benefit of the bankruptcy estate in order "to secure all the bankrupt's property for an equal distribution according to the terms of the [Bankruptcy] Act."[33] To allow the lien of an unperfected security interest, invalid as against the trustee, to be resurrected against a purchaser from the trustee will surely inhibit bidding by such prospective purchasers with resulting harm to the bankruptcy estate. While this question does not seem to have arisen with any frequency, there is clear authority for the position we adopt.

■ In Collier, it is stated,

The fact that a purchaser has acquired knowledge of an unrecorded transfer which is invalid against the trustee under § 70c because of the lack of perfection does not disable the purchaser from acquiring at a bankruptcy sale all of the title which the trustee is authorized to transfer.[34]

In General Motors Acceptance Corp. v. Raz Delivery, Inc., 238 App.Div. 277, 264 N.Y.S. 412 (1933), *noted* in 18 Minn.L. Rev. 586 (1934), Raz had purchased two motor vehicles pursuant to conditional sales contracts reserving title in the vendor as security. General Motors was the assignee of the vendor. The conditional sales contracts were recorded subsequent to Raz's filing of a voluntary petition in bankruptcy, and the trustee sold the vehicles free and clear of liens to Weiss. Weiss then sold them to Raz, who had been discharged from bankruptcy and who obviously had knowledge of the conditional sales agreements. In deciding that Raz held the vehicles free of the General Motors' claim, the court did not rely on the fact that the sale to Weiss was free of liens but held that since General Motors was subordinate to the rights of the trustee, "the lien was lost" and could not be asserted against one holding title acquired through the trustee. 264 N.Y.S. at 415.

32. 4A Collier, *supra* note 6 at ¶ 70.98[16].

33. *Id.* at ¶ 70.45, p. 560.

34. *Id.* at ¶ 70.98[15], p. 1173, citing Segrest v. Hale, 164 S.W.2d 793 (Tex.Civ. App.1941), writ of error refused. While *Segrest* dealt with § 70(a) (5), it is directly in point in holding that a purchaser of real property from the trustee who, prior to the bankruptcy sale, acquired knowledge that the bankrupt had previously conveyed the property by an unrecorded deed ineffective against the trustee was not precluded from taking good title from the trustee.

The *Segrest* case, *arising in the context of a sale under the Bankruptcy Act*, is directly contrary to Follweiler v. Lutz, 102 Pa. 585 (1883), upon which the district court relies. 280 F.Supp. at 436. In *Follweiler* the Court held that a purchaser of land at a sheriff's sale could not prevail against a person who claimed the land under an assignment for the benefit of the creditors, unrecorded in the county where the land was located, of which the purchaser had actual knowledge.

A similar result was reached in Schuch v. Northrup-Jones, Inc., 162 Cal. App.2d 279, 328 P.2d 279 (1958), where the court held that the purchaser at a bankruptcy sale acquired the property free of liens even though he had knowledge of an unrecorded chattel mortgage and the sale was subject to liens and encumbrances.

In summary we conclude,

(1) that under any interpretation of the Uniform Commercial Code of any of the states which had any contact with this transaction, appellee Schwabe's security interest was unperfected;

(2) that the trustee's status as an ideal lien creditor under § 70(c) of the Bankruptcy Act and under the Uniform Commercial Code enabled him to sell the hydraulic cutting machines free of the unperfected security interest, and

(3) that appellant Armstrong, as a purchaser from the trustee, took title to the machines free of appellee Schwabe's unperfected security interest whether or not Armstrong can be charged with knowledge or notice of such security interest.

Because the result here may seem somewhat harsh, as is not unusual in Uniform Commercial Code cases, we have reviewed with special care the authorities cited by the appellee and we have found none which directly call for a conclusion opposite the one we have reached.[35]

The order of the district court affirming the order of the referee in bankruptcy will be reversed and the petition for reclamation filed by appellee accordingly denied.

35. As emphasized by appellant, many of these authorities predate the Uniform Commercial Code and are, therefore, inapplicable to the facts here, *e. g.*, the reference to Annot., Conflict of Laws as to

Conditional Sale of Chattels, 87 A.L.R. 1308 (1933) (which has been supplemented in 148 A.L.R. 375 (1944) and 13 A.L. R.2d 1312 (1950)).