995 F.2d 1063
 20 UCC Rep.Serv.2d 1374
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
IN RE: RALEIGH COMMERCIAL DEVELOPMENT CORPORATION, Debtor.
Orix Credit Alliance, Incorporated, successor through merger
to Leasing Service Corporation, Plaintiff-Appellant,
v.
The Flat Top National Bank; One Valley Bank, Incorporated,
successor through acquisition to Commercial Bank
of Bluefield, Defendants-Appellees,
Internal Revenue Service, Party in Interest-Appellee.
 No. 92-2351.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 29, 1993
Decided: June 9, 1993
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CA-89-783-5, BK-88-45-AP, BK-84-50248)
 Steven L. Thomas, Kay, Casto, Chaney, Love & Wise, Charleston, West Virginia, for Appellant.
 Kermit J. Moore, Brewster, Morhous & Cameron, Bluefield, West Virginia; William S. Estabrook, III, Tax Division, United States Department of Justice, Washington, D.C., for Appellees.
 Karen Speidel Rodgers, Kay, Casto, Chaney, Love & Wide, Charleston, West Virginia, for Appellant. James A. Burton, Acting Assistant Attorney General, Gary R. Allen, William J. Patton, Tax Division, Michael W. Carey, United States Attorney, United States Department of Justice, Washington, D.C., for Appellees.
 S.D.W.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and HAMILTON, Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Raleigh Commercial Development Corporation, a Debtor in a Chapter 11 bankruptcy proceeding (hereinafter the Debtor), received permission from the bankruptcy court to sell certain rock-crushing equipment from two of its Virginia quarries. A dispute then arose as to which of the Debtor's creditors had a first priority lien on the proceeds obtained from the sale of the equipment. Three entities made claims against the equipment proceeds: Orix Credit Alliance (appellant here), "the Banks" (appellees here), and the IRS (party-in-interest-appellee here).
 
 
 2
 Which of the three entities' security interest had priority claim to the equipment proceeds depends, because of the intricacies of the filing requirements of the Uniform Commercial Code (UCC), on whether the equipment sold by the Debtor constituted"mobile goods" within the meaning of UCC § 9-103(3)(a).[1] We need not engage in an exhaustive discussion of the UCC's filing requirements here. The parties have stipulated that if the equipment is deemed mobile, then Orix enjoys a first priority lien on the proceeds from its sale. If the equipment is deemed not to be mobile, the parties agree that the Banks' security interest is superior. The parties also agree that the IRS's lien is junior to whichever lien, Orix's or the Banks', is found to be properly filed (and thus superior) under the UCC.[2]
 
 
 3
 The bankruptcy court held that the industrial equipment at issue here was used in rock quarrying, and that it did not qualify as mobile goods because it was not a type of equipment normally used in more than one jurisdiction. Memorandum Opinion of Bankruptcy Judge Pearson, Jt. App. at 421. Reviewing the bankruptcy court's findings as to mobility under a clearly erroneous standard, the district court affirmed. Orix filed a timely appeal.
 
 
 4
 The critical issue here is whether the equipment sold by the Debtor constituted "mobile goods" within the meaning of UCC § 9-103(3)(a). To be classified as mobile goods under this provision, the equipment must be: (1) mobile; and (2) of a type normally used in more than one jurisdiction (such as motor vehicles, airplanes, shipping containers, road building equipment, and construction machinery). See 3B Michie's Jurisprudence of Virginia & West Virginia, Commercial Law § 98, p. 763 (1984). The relevant case law reflects confusion in the courts over whether the terms "normally used" and "mobile" refer to a debtor's actual use of the goods, or whether they imply objective standards of what can normally be used in more than one state, or what is normally considered "mobile." See 2 White & Summers, Uniform Commercial Code § 24-23 (3d ed. 1988). According to the Official Comment to § 9-103(3), "there is no requirement that particular goods be in fact used out of state." We agree with the Third Circuit that "it seems clear that the test for mobile goods turns on the type of goods involved and not on their actual use in, or transportation between, more than one jurisdiction." In re Dennis Mitchell Indus., Inc., 419 F.2d 349, 358 (3d Cir. 1969).
 
 
 5
 The district court decided that determining whether a good is "mobile" under § 9-103 involves a question of fact.[3] Thus the district court did not conduct a de novo review of the bankruptcy court's findings, but instead reviewed the findings to determine whether they were clearly erroneous. Orix contends that the district court should have reviewed the bankruptcy court's decision de novo because the question of whether the equipment constituted mobile goods is a question of law. We disagree. Even Orix admits that the mobility determination is one that ultimately rests upon factual findings. Appellant's Brief at 19. See also In Re Minnesota Util. Contracting, Inc., 110 B.R. 414, 416, 423 (Minn. 1990) (reviewing bankruptcy court's findings as to mobility of goods under the clearly erroneous standard of review). Thus to prevail on appeal, Orix must demonstrate that the bankruptcy court erred in concluding that the equipment did not constitute mobile goods under the UCC.
 
 
 6
 The equipment at issue here consists of various machinery and structures useful in rock quarrying. Some of this equipment is motorized and self-propelled, suggesting that it is "mobile." There was conflicting evidence given at trial concerning the ease with which the equipment could be moved, and whether the equipment at issue had in fact been moved to or from the Debtor's quarry prior to its sale. Mobility is not measured, however, by the ease with which an item can be moved from jurisdiction to jurisdiction. See 3B Michie's Jurisprudence of Virginia & West Virginia, Commercial Law § 98, p. 763 (1984). Not all equipment that can be moved is the type of equipment normally used in more than one jurisdiction. To determine whether a particular piece of equipment is normally used in more than one jurisdiction, the proper focus is not the debtor's use of the equipment, but the ordinary business practice regarding equipment of that nature. See In Re Minnesota Util. Contracting, Inc., 101 B.R. 72 (Bankr. D. Minn. 1989), (general business practice should determine whether the goods are of a type normally used in more than one jurisdiction), rev'd on other grounds 110 B.R. 414 (D. Minn. 1990).
 
 
 7
 Based on the record, the bankruptcy court had ample evidence upon which to conclude that the "general business practice" of the rock quarry industry demonstrated that the equipment here was not of a type normally used in more than one jurisdiction. In our view, the courts below could have concluded that the equipment at issue fell within the ambit of mobile goods under the UCC. There was testimony at trial that similar equipment has historically been transported from place-to-place for certain types of jobs, such as Interstate construction in the 1970's. Even so, asserting that the lower courts could have legitimately reached a different conclusion does not render the decision below clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 574 (1985). Finding no clear error in the findings of the courts below, we
 
 
 8
 AFFIRM.
 
 
 
 [1]
 W. Va. Code § 46-9-103(3)(a) (Supp. 1992) tracks the language of UCC § 9-103(3)(a) and for clarity and convenience will be cited herein as § 9-103(3)(a)
 
 
 [2]
 Even though the IRS's lien is junior regardless of which party has the superior lien, the IRS has a financial interest in the outcome of this appeal. If Orix prevails here, the size of Orix's lien on the equipment proceeds will effectively extinguish any claim of the IRS to the proceeds
 
 
 [3]
 The district court determined, and we agree, that the ultimate resolution of the instant dispute involves a mixed question of law and fact. The proper application of the UCC statute is a purely legal matter once the determination regarding the mobility of the goods at issue is made. But the mobility determination rests on factual determinations as to whether certain pieces of equipment are mobile within the meaning of the statute