**GOLDEN PLAINS CREDIT UNION,
Plaintiff–Appellant,**

v.

**Bud KONKEL, d/b/a Konkel Equipment Company or Konkel Equipment Company, a corporation, Defendant–Appellee.**

No. 86CA0552.

Colorado Court of Appeals,
Div. VI.

March 17, 1988.

Rehearing Denied April 14, 1988.

Certiorari Granted (Konkel)
Aug. 22, '1988.

Cogswell and Wehrle, William E. Brayshaw, Kristen M. Myer, Denver, for plaintiff-appellant.

Johnson & McLachlan, George McLachlan, Lamar, for defendant–appellee.

CRISWELL, Judge.

Plaintiff, Golden Plains Credit Union (Credit Union), appeals the summary judgment dismissing its claim for conversion against defendant, based upon defendant's purchase, and later sale, of a farm combine in which Credit Union claimed to have a perfected security interest. We reverse and remand for further proceedings.

Duane Lewis (Lewis) was a Hamilton County, Kansas, farmer who was also engaged in the business of custom cutting other farmers' crops in several states, including Colorado. In May 1978, Lewis borrowed money from Credit Union. The loan was secured by a security agreement describing a John Deere combine, then located in Kansas. Credit Union filed a financing statement with the registrar of deeds in Hamilton County, but no filing was made with the Kansas secretary of state.

Lewis brought the combine to Colorado in October 1979 and stored it on a farm in Baca County. Credit Union was unaware

of the equipment's removal from Kansas and did not file a financing statement with any official in this state. In February 1980, defendant purchased the combine from Lewis.

The trial court held that, under § 4–9–103(1)(d), C.R.S. (1987 Cum.Supp.), Credit Union had only four months from the date that Lewis brought the combine into this state within which to perfect its security interest in the equipment by filing a financing statement in this state. Because Credit Union failed to do so, the court concluded that defendant took title to the combine free of any security interest and, thus, did not convert it.

## I

Both Colorado and Kansas have adopted the Uniform Commercial Code (UCC) and, to the extent that the provisions of the UCC are applicable here, the two statutes are virtually identical. *See* § 4–1–101, et seq., C.R.S., and Kan.Stat.Ann. § 84–1–101, et seq. (1983).

This appeal raises two issues involving the application of the UCC. The first is whether Credit Union properly perfected a security interest in the combine in Kansas. If so, the second question is whether Credit Union was required to re-perfect such security interest in a timely fashion, after the farm combine was brought to Colorado.

Resolution of these two issues requires the application of Parts 1 and 4 of Article 9 of the UCC, which govern the creation and establishment of security interests in personal property. Specifically, UCC § 9–401 (§ 4–9–401, C.R.S.; Kan.Stat.Ann. § 84–9–401) sets forth the rules to determine, in the first instance, the appropriate office within a state where a creditor must file a financing statement in order to perfect a security interest. UCC § 9–103 (§ 4–9–103, C.R.S.; Kan.Stat.Ann. § 84–9–103) establishes the time limits within which an additional financing statement must be filed with the appropriate office in another state, when either the debtor or the goods are removed to that other state.

## A.

Under UCC § 9–401(1) (Kan.Stat. Ann. § 84–9–401(1) (1983)), the "proper place to file" a financing statement is normally the office of the Kansas secretary of state. However, if the collateral is "equipment used in farming operations," to perfect a security interest in the collateral, a financing statement must be filed in the office of the registrar of deeds in the county where the debtor resides. Kan.Stat. Ann. § 84–9–401(1)(a) (1983).

The UCC does not define "farming operations," and neither the official comments nor the Kansas comments to that statute are helpful in determining the meaning of the phrase "equipment used in farming operations." However, if the equipment, such as the farm combine involved here, is specifically designed to be used for farming functions, no further inquiry need be made to conclude that it is "equipment used in farming operations." Indeed, to require the creditor in such circumstances to make a further investigation of the exact use to which the debtor intends to place the equipment, in order to determine the proper office with which to file a financing statement, would frustrate the purpose of the statutory requirement. *Sequoia Machinery, Inc. v. Jarrett,* 410 F.2d 1116 (9th Cir.1969). *Cf. Mountain Credit v. Michiana Lumber & Supply, Inc.,* 31 Colo.App. 112, 498 P.2d 967 (1972) (diesel engine logloader used in commercial logging business not farming equipment).

Thus, we conclude that the farm combine here was equipment used in farming operations. Credit Union properly filed the financing statement with the county registrar of deeds, and a perfected security interest in that combine was acquired by Credit Union in Kansas before it was brought into this state.

## B.

UCC § 9–103 sets forth the time limits within which a financing statement must be filed in a second state. Normally, when collateral in which a security interest has been perfected elsewhere is brought

into another state, a financing statement must be filed with the proper office of that state within four months of its arrival in order to continue perfection of the security interest. UCC § 9–103(1)(d). However, pursuant to UCC § 9–103(3)(a), this time requirement does not apply to goods that:

"are mobile and ... are of a type normally used in more than one jurisdiction, such as ... commercial harvesting machinery and the like...."

In the case of such mobile equipment, a financing statement must be filed within four months after the debtor relocates his business to the second state. UCC § 9–103(3)(e). Thus, if the equipment is not mobile, the four-month filing period commences to run when it is brought into the second state; if it is mobile equipment, the filing period does not commence until the debtor moves his place of business into that state.

In considering the nature of the goods falling within this provision, the courts have concluded that such items as farm tractors, *Central National Bank v. Wonderland Realty Corp.*, 38 Mich.App. 76, 195 N.W.2d 768 (1972), heavy construction equipment used for landscaping, *In re Golf Course Builders Leasing, Inc.*, 768 F.2d 1167 (10th Cir.1985) (applying California's version of the UCC), excavation machinery, *Westinghouse Credit Corp. v. Rovi Property & Management Corp.*, 607 S.W.2d 682 (Ky.Ct.App.1980), and large earth moving equipment, *General Electric Credit Corp. v. R.A. Heintz Construction Co.*, 302 F.Supp. 958 (D.Or.1969) (relying upon Oregon statute to apply Colorado law), constitute mobile equipment under UCC § 9–103.

Also of significance is the Kansas comment to its statute, which states:

"An excellent example of mobile goods, and one which is set forth expressly in the subsection, is commercial harvesting machinery. For example, if the debtor is a custom cutter headquartered in Wichita, Kansas would be the proper place to file the financing statement even though the harvesting machinery goes from Texas to North Dakota during the cutting season." Kan.Stat.Ann. § 84–9–103 (1983) (comments).

We conclude, therefore, that the farm combine that is the subject of this litigation, being of a type used by custom cutters in multi-state operations, is mobile equipment within the meaning of UCC § 9–103(3)(a). Thus, Credit Union was not required to file a financing statement within four months of the date that the farm combine was brought into Colorado; rather, it would have been required to file such a statement within four months of the date that Lewis moved his business to Colorado.

■ Defendant argues, however, that the same equipment cannot be both "used in farming operations" under UCC § 9–401(1)(a) and "mobile" equipment under UCC § 9–103(3)(a) at the same time. We disagree.

UCC § 9–401(1) creates rules for determining *where* a financing statement must be filed in the first instance, and draws a distinction between goods used in farming operations and other goods, without regard to their mobility. On the other hand, the rules established by UCC § 9–103 were not designed to determine *where* an initial filing is to occur; they establish time limits for filing additional financing statements in other states and, for this purpose, the mobility of the goods becomes important, irrespective of their agricultural use. Nothing within the provisions of either statute makes their terms mutually exclusive, and we conclude that, if equipment meets the requirements of both statutory provisions, it must be considered to fall into both categories. *See Central National Bank v. Wonderland Realty Corp., supra.*

## II

■ In granting defendant's motion for summary judgment, the trial court concluded that the farm combine did not constitute mobile equipment under UCC § 9–103(3) and that, consequently, because Credit Union did not file a financing statement in Colorado within four months after the combine was brought to this state, it possessed no perfected security interest in it. We have concluded, however, that, since mobile

equipment was involved, the triggering event for the running of the four-month filing period would be the relocation of Lewis' business to this state, not the importation of the combine.

The issue whether Lewis ever moved his place of business to Colorado was not passed upon by the trial court. Therefore, while we reverse the trial court's grant of summary judgment to defendant, we do not foreclose consideration of that issue in any future proceedings.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

BABCOCK and SILVERSTEIN *, JJ., concur.