**In re VARSITY SODDING
SERVICE, INC.**

**PNC BANK, National Association,
Successor by Merger to First
Eastern Bank, N.A., Movant,**

v.

**VARSITY SODDING SERVICE,
INC., Respondent.**

**Bankruptcy No. 5–93–02078.**

United States Bankruptcy Court,
M.D. Pennsylvania,
Wilkes–Barre Division.

Jan. 12, 1996.

Eugene Kelley, Wilkes–Barre, PA, for Debtor.

Richard Hodges, Scranton, PA, for Movant.

Robert Spielman, Bloomsburg, PA, for John Yarosz.

John Morano, Scranton, PA, for U.S.A.

Robert Sheils, Trustee in Bankruptcy, Scranton, PA.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

First Eastern Bank, N.A., now known as PNC Bank, ("Bank"), has filed a Motion for Relief against the Debtor seeking authority to pursue certain collateral of the Debtor including equipment and accounts receivables. The Debtor opposes relief from the automatic stay as does the Internal Revenue Service, a creditor of the estate that maintains that it has a security interest in receivables superior to the interests of the Bank.

The Debtor has also filed an objection to the proof of claim filed by the Bank.

Intervening in the relief motion is one, John Yarosz, who, as an officer of Varsity Sodding Service, Inc., was personally obligated to the IRS for the taxes. If the Bank succeeds in having a priority in the receivables over the IRS, this would apparently be to the detriment of Yarosz.

At the time of the trial on September 12, 1994, the parties entered into a stipulation that resolved some of the issues before the court. The IRS agreed to withdraw its objection to the motion for relief filed by the Bank and the IRS and the Bank agreed that the pre-petition account receivable in the total amount of Forty–Four Thousand One Hundred Four and 20/100 Dollars ($44,-104.20) was subject to a lien in favor of the IRS superior in position to the Bank's lien.

There was a further stipulation read into the record which focused the issues to be decided by the court. The parties agreed that the Bank had a security interest in equipment and receivables based on certain documents executed by the Debtor. The Debtor admits that no post-petition payments have been made to the Bank with regard to the security agreements.

The issue in this case turns on whether the Bank's filed financing statements in Pennsylvania were sufficient to secure an interest in the Debtor's equipment which was located out of state. The Bank maintains that these items of equipment were "mobile goods" under the provisions of 13 Pa.C.S.A. § 9103(c). If these goods are "mobile goods" as defined by the statute, then under the provisions of Section 9103(c), the filing in the jurisdiction of the Debtor's "chief executive office" would be sufficient to perfect its security interest against the equipment. On the other hand, if the items are not "mobile goods", then a secured party would lose its perfected status against third parties (such as a trustee in bankruptcy) if the refiling does not take place in the state of the location of the property within four (4) months after its removal to that jurisdiction.

John Yarosz and the Debtor maintain that the equipment was not mobile goods. The Bank maintains otherwise. It is admitted that the equipment was located in Maryland and New Jersey. It is admitted that the Bank's financing statements are filed solely in Pennsylvania.

The equipment consists of various items identified in Yarosz' Exhibit No. 1. They are generally described as items used in the landscaping business including backhoes, loaders, mulch spreader, trencher, landscape rakes, vibrator plow, hydro-seeders, etc. None of these items could be used over the roads. All of them would have to be "trailered" or chained onto a flat-bed trailer for movement from one area to another. While the equipment is used to move earth in landscaping operations, none of it is of a large-scale nature such as what exists with regard to excavation equipment.

Traditionally, the Debtor engaged in a residential landscaping business with its equipment primarily located in Luzerne County, Pennsylvania. Nevertheless, at some point, the Debtor became involved in projects that were outside of the Commonwealth of Pennsylvania and work was done in New York state, Maryland, New Jersey and Washington, D.C.

The equipment has been stipulated to be worth Eighty–Two Thousand Six Hundred Dollars ($82,600.00) and the debt to the Bank exceeds Five Hundred Thousand Dollars ($500,000.00).

There seems to be no dispute that the equipment has been located outside of the Commonwealth of Pennsylvania for a number of years prior to the Debtor's bankruptcy on December 1, 1993, and the Bank made no filing in the states in which the equipment was located.

### DISCUSSION

Section 9103 of the Pennsylvania Uniform Commercial Code (13 Pa.C.S.A. § 9103) indicates that the filing statement for "mobile" goods can be filed in the state where the chief executive office is located. In such instance, the financing statement need not be refiled in the jurisdiction where the collateral is situated.

To be under the umbrella of Section 9103(c), there are four (4) requirements for the goods in question, as follows:

(1) The goods must be mobile;

(2) The goods must be of a type normally used in more than one jurisdiction, "... such as motor vehicles, trailers, rolling stock, airplanes, shipping containers, road building and construction machinery and commercial harvesting machinery and the like ...";

(3) Goods cannot be covered by a certificate of title; and

(4) The goods must be either equipment of the Debtor or inventory leased or held for use by the Debtor.

"Of these, only the first two requirements pose much interpretive difficulty. Does the term 'normally used' refer to a particular debtor's *actual* use of the collateral, or does it imply an objective standard of what can be normally used in more than one state? If the latter, should 'normal' be given a local or a national objective meaning?" *2 White and Summers, Uniform Commercial Code at p. 404 (3rd ed. 1988).*

■ Fortunately, our circuit has given us guidance on this question in making it clear that "... the test for mobile goods turns on the type of goods involved and not on their actual use in or transportation between more than one jurisdiction." *In the Matter of Dennis Mitchell Industries, Inc.,* 419 F.2d 349, 358 (3rd Cir.1969).

We thus must discount any suggestion that the current location of the Debtor's equipment in states other than Pennsylvania are of any value in arriving at our ultimate decision as to whether the equipment is in the classification of "mobile goods".

■ Despite this guidance from the circuit, the bankruptcy court in *In re Nardulli & Sons Co., Inc.,* 66 B.R. 871 (Bkrtcy. W.D.Pa.1986), *rev'd on other grounds,* 836 F.2d 184 (3rd Cir.1988) examining the applicability of this section to a Caterpillar dozer, two wheel loaders and a truck scale, noted that this type of equipment might very well be used for road building and construction and, thus, might qualify as "mobile goods" but, because they were *actually* used for strip-mining, the court concluded that the equipment was not "mobile goods" under Section 9103. *Id.* at p. 879. The reliance of the *Nardulli* court on the "actual use" of the equipment cannot be justified in light of the clearly contrary instructions given by the circuit court in *In the Matter of Dennis Mitchell, supra.* Moreover, the language of the UCC quite naturally lends itself to defining the normal use as focusing "... on the inherent qualities of the collateral and the uses to which such collateral would normally be put." [1]

■ This court is quite comfortable in concluding that the items described in the case at bar come within the definition of mobile, i.e. "capable of moving or being moved". *Webster's New Collegiate Dictionary (1979).* The inherent characteristics of landscaping

---

**1.** The language cited was used in *Konkel v. Golden Plains Credit Union,* 778 P.2d 660 (Colo.1989)

equipment suggest that its usefulness would be quite limited if it could not be located and relocated from site to site. Nevertheless, will the "normal use" of this equipment take it from state to state?[2] This court concludes not. Those items set forth by example in Section 9103(c) as equipment normally used in more than one jurisdiction in one sense refer to goods which quite ordinarily would be located in several states over the course of a given week (motor vehicles, trailers, rolling stock, airplanes and shipping containers). In the other sense, the examples identify large pieces of equipment the investment in which would require its use over a large regional area including from one state to another (road building and construction machinery and commercial harvesting machinery). By way of illustration, both a lawn mower and a combine basically perform their function by cutting vegetation. Nevertheless, the very investment in owning a combine would require its use over the widest area possible including the various states. Such cannot be said about a lawn mower or a similar small item of equipment.

The earth moving equipment at issue before us was described by John Yarosz as follows:

> "... there's a definite difference between earth moving equipment and what we use. You could move, you know, if you were to dig a hole for a tree, you might dig a hole one and half feet by two feet, something like that. But you couldn't do it to put an extensive pipe—you couldn't install sewer pipe with it, so to speak. It—it's really attuned to fine grading and you know light earth moving work." *Transcript dated September 12, 1994 at p. 32.*

In short, the only witness that testified about the utility of the equipment hardly identified it as in the same league as "road building and construction machinery". The mere fact that the items were located in different states is of no import. What is important is that "... the secured party is under a duty to keep himself informed of his debtor's dealings with the collateral." *In the*

*Matter of Dennis Mitchell Industries, Inc., supra* at p. 358. The Debtor has met its burden of showing that the financing statements were not filed for these goods in the states where the goods were located and the Bank has failed in its burden of producing sufficient evidence that these items were "mobile goods normally used" in more than one jurisdiction. See *In re Minnesota Utility Contracting, Inc.,* 110 B.R. 414 (D.Minn. 1990).

We conclude that the Bank no longer has a perfected security interest in the equipment nor in its proceeds.

Attached is our Order.

### *ORDER*

The Bank having lost its perfected security interest in the equipment and in the proceeds therefrom (rents), the Bank's Motion for Relief from the Automatic Stay is hereby denied and the Debtor's Objection to the proof of claim is sustained to the extent that the proof of claim asserts a perfected security interest.

---

to describe the "normal use" test. The *Konkel* court provided further descriptions of the "intended use" test as well as the "actual use" test.

**2.** The word "jurisdiction" in Section 9103 has been interpreted to mean different state jurisdictions. *Ingersoll–Rand Financial Corp. v. Nunley,* 11 B.R. 528, 531 (W.D.Va.1981).