

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-1998

# In Re: Varsity

Precedential or Non-Precedential:

Docket 96-7643

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"In Re: Varsity" (1998). *1998 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 13, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7643

IN RE:

VARSITY SODDING SERVICE,
        Debtor

PNC BANK, NATIONAL ASSOCIATION
f/k/a FIRST EASTERN BANK, N.A.;
JOHN J. THOMAS, Judge;
GREGORY R. LYONS,

v.

VARSITY SODDING SERVICE

PNC Bank, National Association,
s/b/m/t First Eastern Bank, N.A.,
        Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 96-CV-00250)

Argued June 23, 1997

BEFORE: GREENBERG, McKEE, and WELLFORD,*
Circuit Judges

(Filed: March 13, 1998)

_____

* Honorable Harry W. Wellford, Senior Judge of the United States
Court of Appeals for the Sixth Circuit, sitting by designation.

Richard K. Hodges (argued)
O'Malley & Harris, P.C.
345 Wyoming Avenue
Scranton, PA 18503

 Attorney for Appellant.

Eugene C. Kelley (argued)
Hoegen, Hoegen & Kelley
152 South Franklin Street
Wilkes-Barre, PA 18701

 Attorney for Debtor.

OPINION OF THE COURT

WELLFORD, Senior Circuit Judge.

Varsity Sodding Service, Inc. ("Varsity"), incorporated in 1978, was engaged in the landscaping and nursery businesses. In 1990, First Eastern Bank, N.A. ("the Bank"),[1] in Wilkes-Barre, Pennsylvania, financed the purchase of various pieces of landscaping equipment by Varsity, the now bankrupt debtor, for some $450,000. Varsity agreed to keep its records with regard to the loan at its principal office in Swoyersville, Pennsylvania. In connection with the loan, Varsity executed financing statements and granted the Bank a lien on "inventory machinery and equipment and furniture and fixtures."[2] The security agreement was to be construed under Pennsylvania law, and it provided that Varsity would promptly notify the Bank of a change in the location of the subject collateral. The financing statements were continued in force through 1993 by filing in Luzerne County, Pennsylvania, and in the office of the Secretary of State of Pennsylvania.

The machinery and equipment purchased by Varsity

---

1. PNC Bank is the successor by merger to First Eastern Bank.

2. Other collateral for the loan consisted of accounts receivable and assignment of life insurance. The later modification agreement added as collateral a mortgage on real estate in Carbon and Luzerne Counties, Pennsylvania.

included backhoes, loaders, a mulch spreader, a trencher, landscape rakes, a vibrator plow, and hydro-seeders. The total financing arrangement between the parties involved notes totaling in excess of $500,000. The machinery and equipment are the only collateral at issue in this proceeding, and the parties have stipulated that it is worth only $82,600. See In re: Varsity Sodding Service, Inc., 191 B.R. 306 (Bankr. M.D. Pa. 1996).

After 1990, Varsity transported the equipment to Maryland and then to New Jersey. On December 1, 1993, Varsity filed for bankruptcy protection under Chapter 11, at a time when the equipment was still in New Jersey. Varsity never filed financing statements in New Jersey.

In the bankruptcy proceeding, the Bank filed a proof of claim as a secured creditor in an amount exceeding $500,000, and also filed a motion for a stay with respect to its claimed security interests. The chief officer of Varsity, John Yarosz, intervened opposing the Bank's claim, as did the bankruptcy trustee. The bankruptcy court held that, because the Bank failed to file the required financing statements in New Jersey, it "lost its perfected security interest in equipment and in the proceeds therefrom." The Bank appealed that ruling to the district court, because it stood to receive nothing from the sale or value of the equipment. In an order dated August 30, 1996, the district court denied the Bank relief and affirmed the bankruptcy court's decision. The Bank filed a timely appeal to this court.

The district court below determined that the singular issue before it "was whether certain earth-moving equipment constitutes `mobile goods' for filing purposes under the [applicable provision of the] Uniform Commercial Code." If the collateral were deemed to be "mobile," then the transporting of the collateral to another state would have no effect on the Bank's perfected security interest in Pennsylvania under U.C.C. S 9-103(3). The district court agreed with the bankruptcy court that the equipment in question was not "mobile goods:"

> The equipment consists of various items identified in Yarosz' Exhibit No. 1. They are generally described as

3

items used in the landscaping business including
backhoes, loaders, mulch spreader, trencher, landscape
rakes, vibrator plow, hydro-seeders, etc. None of these
items could be used over the roads. All of them would
have to be "trailered" or chained onto a flat-bed trailer
for movement from one area to another. While the
equipment is used to move earth in landscaping
operations, none of it is of a large-scale nature such as
what exists with regard to excavation equipment.

The district court added:

[L]andscaping is not an activity that takes place over
such a large area that the equipment would be
expected to be in more than one state during the
course of a week.

Perfection of a security interest ordinarily requires filing
in a location in which the secured collateral is located.
Pennsylvania law, however, provides for a four month
period of protection for a security holder after a change in
location from one county to another.

(c) Effect of change in location of debtor or coll ateral.--
A filing which is made in the proper county continues
effective for four months after a change to another
county of the residence of the debtor or place of
business or the location of the collateral, whichever
controlled the original filing. It becomes ineffective
thereafter unless a copy of the financing statement
signed by the secured party is filed in the new county
within said period. The security interest may also be
perfected in the new county after the expiration of the
four month period; in such case, perfection dates from
the time of perfection in the new county. A change in
the use of the collateral does not impair the
effectiveness of the original filing.

13 PA. CONS. STAT. ANN. S 9401(c). The purpose of this
provision "is to put future creditors and subsequent
purchasers of the collateral on notice of the lien." General
Elec. Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184,
190 (3d Cir. 1988) (citing Industrial Packaging Prods. Co. v.
Fort Pitt Packaging Int'l, 399 Pa. 643, 648, 161 A.2d 19, 21

4

(1960), and Casterline v. Gen. Motors Accept. Corp., 195 Pa. Super. Ct. 344, 351, 171 A.2d 813, 814 (1961)).

Both the bankruptcy court and the district court relied upon In the Matter of Dennis Mitchell Industries, 419 F.2d 349 (3d Cir. 1969), for its holding that the chattels and equipment involved were not "mobile" goods within the meaning of S 9-103(2) of the U.C.C. (13 PA. CONS. STAT. ANN. S 9103(b)). We note first several distinguishing characteristics of Dennis Mitchell from the facts of this case:

> 1. In Dennis Mitchell the debtor filed the requisite financing statements in Pennsylvania, but the collateral was never located in that state.

> 2. The collateral bought in New York was taken directly to debtor's plant in New Jersey, and remained at this location despite debtor's agreement to send and keep it in Pennsylvania.

> 3. The receiver in bankruptcy sought to sell this equipment to another secured creditor; the lienholder in Pennsylvania asserted priority.

> 4. The collateral involved was industrial (plant) equipment.

The court stated in Dennis Mitchell:

> Had the machinery been taken to Mitchell's Philadelphia plant within 30 days after the security interest had attached, it is clear that Pennsylvania law would control, and Schwabe's Pennsylvania filing would have perfected its security interest as the parties intended that the property be kept in Pennsylvania (see S 9-103(3). . .).

Dennis Mitchell, 419 F.2d at 357 (footnote omitted). The court went further, however, to hold that the secured creditor's interest was imperfected after the secured property had been in New Jersey more than four months, even though the creditor had no knowledge that the property was not in Pennsylvania.[3] Id. at 358. As a

_____

3. The court cited no Pennsylvania law for this proposition, but mentioned the decision of a referee in In re Welker, 2 U.C.C. Reporting Serv. 169 (W.D. Pa. 1964).

5

consequence, the court in Dennis Mitchell concluded that the creditor's interest was subordinate to the rights of the bankruptcy trustee under the circumstances unless the machinery was of the type described in S 9-103(2). Id.

The court then addressed whether the collateral constituted "goods of a type which are normally used in more than one jurisdiction," i.e., "mobile goods," under section, S 9-103(2). The court reasoned that the enumeration of certain types of goods was not intended to be all inclusive, and that the type of goods involved, not their actual use, is the key to resolving the issue. Id. The fact that "the goods may be and are easily transported from state to state" is not dispositive. Id. The court concluded, without elaboration, that "the industrial equipment [plant machinery] of the type involved here may not be characterized as mobile goods within the meaning of that section." Id. (emphasis added).

In footnote 31, the Dennis Mitchell court cited to a comment following U.C.C. S 9-103(2), which emphasizes that the rule applicable to mobile goods may apply "whether the particular collateral in question is in fact mobile or not;" the real question is "whether the collateral is of a type normally used in more than one jurisdiction." Id. at 358, n.31 (quoting U.C.C. S 9-103(2), Comment 3. In the instant case, the bankruptcy court conceded, we believe correctly, that inherent characteristics of landscaping equipment suggest that its usefulness would be quite limited if it could not be relocated from site to site.[4] Varsity Sodding, 191 B.R. at 308. The bankruptcy court added, moreover, that "the language of the UCC quite naturally lends itself to defining the normal use as focusing `. . . on the inherent qualities of the collateral and the uses to which such collateral would normally be put.' " Id. (quoting Konkel v. Golden Plains Credit Union, 778 P.2d 660, 663

_____

4. Golden Plains Credit Union v. Konkel, 759 P.2d 788, 5 UCC Rep. Service 1196 (Colo. Ct. App. 1988), discussed the meaning of S 9-103(2) more fully and was affirmed on this point by the Colorado Supreme Court, 778 P.2d 660, 663 (Colo. 1989)(en banc). The appellate court cited cases holding that this section included such items as (1) farm tractors, (2) heavy construction equipment, (3) excavatio n machinery, and (4) large earth moving equipment as "mobile goods" or equipment.

6

(Colo. 1989)(en banc)). Thus, the precedent relied upon by the district and bankruptcy courts leads us to a conclusion different than that of those courts with respect to whether the collateral in question constitutes "mobile goods" within the meaning of the U.C.C. as adopted in Pennsylvania.

The district court, however, analyzed another portion of the bankruptcy court decision. The bankruptcy court found Varsity to be "engaged in a residential landscaping business [and] engaged in projects that were outside . . . Pennsylvania." Varsity was clearly a large-scale commercial and multiple residency project landscaping operation, and it utilized very substantial, expensive equipment as it moved regularly from one site to another.5  The machinery and equipment in question were admittedly readily "moveable" by means of a tractor-trailer. Yarosz described one "Skitsgear loader," as machinery which moved "topsoil" and grades land. He described the "trenching equipment" as that which installs "irrigation systems" and trenches for pipe connection (with four wheels and a "long boom off the back," a kind of "tractor"). This equipment would be like a backhoe.6 The equipment generally was capable of operation on a highway but was hauled instead. The "grader" equipment was similar to the kind used to "grade a street." We find such machinery and equipment to be substantial construction-type equipment akin to "road building and construction machinery" specifically set out as examples in 13 PA. CONS. STAT. ANN. S 9103(c)(1).

The remaining equipment at issue was lighter, more easily moved, and all of the equipment was normally used in different jobs, at different projects, in various states during the period of the security agreement. According to Yarosz's testimony, Varsity utilized the equipment in question on large commercial and residential housing project landscaping jobs. The machinery remained on sites outside of Pennsylvania for more than a year. This equipment, according to the debtor's brief, "had to be

_____

5. Varsity's principal officer testified that it "did large landscaping projects and large trac[t] housing projects."

6.  The "vibrator plow" is the same type as the trencher--it "vibrate[s] the
pipe in instead of trenching."

7

dragged or hauled from site to site." We conclude from these undisputed facts that the "normal" use of such machinery would take it from state to state. In light of this fact, the bankruptcy court erred in finding that the " `normal use' of this equipment [would not] take it from state to state."7

We find that the Varsity operations, including earth moving, were sufficiently "large-scale" in nature and akin to road grading, digging, and general excavation work that the equipment used meets the requirements and is characteristic of the mobile goods described in 13 P A. CONS. STAT. ANN. S 9103(c)(1). See In re Golf Course Builders Leasing, Inc., 768 F.2d 1167, 1168 (10th Cir. 1168)(golf course landscaping equipment, which was adaptable to land mining operations, was considered to be "mobile goods" under the U.C.C.). It was clear that Yarosz headed a landscaping company that became much more than a local residential concern. At least one of its projects involved $1,000,000. Therefore, the bankruptcy court was clearly erroneous in finding that "[w]hile the equipment is used to move earth in landscaping operations, none of it is of a large-scale nature such as what exists with regard to excavation equipment." It is immaterial that, generally speaking, "[l]andscaping is not an activity that takes place over such a large area that the equipment would be expected to be in more than one state during the course of a week." As is explained above, Dennis Mitchell, relied upon by the district and bankruptcy courts, actually supports our decision.

In summary, we conclude that the equipment and machinery at issue constitute "mobile goods," given the nature of Varsity's landscaping business. The Bank's financing statements were properly filed in Pennsylvania. The Bank perfected its security interest and is entitled to priority status over that of the bankruptcy trustee and Yarosz personally. The equipment is of the type and

_____

7. Our holding is consistent with the bankruptcy court's statement that the investment in this equipment "would require its use over a large regional area including from one state to another." Varsity Sodding, 191 B.R. at 308.

8

inherent quality that its "normal use" would be reasonably expected to take it from state to state in the business conducted by Varsity.

We, accordingly, REVERSE the judgment of the district court and award priority to the Bank in the equipment and machinery at issue.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

9